IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GHAEM "CAM" ZARIF
ZARGARIAN TALA,

    Plaintiff,

v.                                        Civil No. 24-3598-BAH

JAMES RICHARD SEBA,

    Defendant.

## MEMORANDUM OPINION

Plaintiff Ghaem "Cam" Zarif Zargarian Tala ("Plaintiff") brought suit against James Richard Seba ("Defendant"), alleging failure to pay minimum wage under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. (count I); failure to pay minimum wage under the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. § 3-401 et seq. (count II); and unpaid wages under the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. § 3-501 et seq. (count III). ECF 1. Pending before the Court is the parties' joint motion for approval of settlement agreement (the "Joint Motion"). ECF 9. The Joint Motion includes memoranda of law and exhibits.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons stated below, the Joint Motion is **GRANTED**.

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

**I.      BACKGROUND**

This civil action arises out of Plaintiff's allegations that Defendant, in his capacity as Plaintiff's employer, failed to pay wages that he earned from approximately August 14, 2022, to September 24, 2022. ECF 1, at 3 ¶ 14. Plaintiff sought to collect the unpaid minimum wages, liquidated damages, and other relief provided by the FLSA; unpaid minimum wages, liquidated damages, and statutory damages provided by MWH and MWPCL; and attorneys' fees and costs provided by FLSA, MWHL, and MWCPL. *Id.* at 1 ¶ 1–2.

Defendant was the Founder and General Managing Partner of Maryland company Vicour Holdings, LLC ("Vicour"). ECF 1, at 2 ¶ 11. Vicour was the parent company to several different corporate entities, including Pavement Company, LLC ("Pavement"). *Id.* ¶ 7. Pavement was a Maryland company that "engage[d] in a variety of business operations relating to pavement throughout the region." *Id.* ¶¶ 6–8. By virtue of Vicour's ownership of Pavement, Defendant had an active role in managing nearly every aspect of Pavement's business affairs and operations. *Id.* ¶ 12. For example, Defendant selected and hired Pavement's most recent President, Creed Williams. *Id.* at 3 ¶ 15. Defendant regularly worked with Williams and oversaw the decisions that he made as Pavement's President. *Id.* ¶ 16. Williams also regularly reported to Defendant and confirmed his decisions with Defendant about Pavement's financial status, upcoming jobs, and operational needs. *Id.* at 4 ¶ 21.

Additionally, Plaintiff alleges that Defendant exercised significant authority over the management of Pavement's general business operations and was aware of Pavement's operational and financial issues. ECF 1, at 5 ¶ 32. This included actively participating in monthly board meetings, going into Pavement's office to directly speak to Pavement's employees, reviewing and approving employee reimbursements, approving weekly reports of project materials and their

2

prices, and requiring monthly sales analyses of current and proposed projects. *Id.* at 4 ¶¶ 21, 23–28.

On February 15, 2021, Plaintiff signed an employment contract with Pavement for a position as Pavement's Chief Estimator at an annual salary of $98,000.00. ECF 1, at 6–7 ¶ 42. Plaintiff asserts that he began working for Pavement as its Chief Estimator on or about March 1, 2021. *Id.* at 6 ¶ 41. Plaintiff worked Monday through Friday, from 8:00 AM to 5:00 PM and was paid $3,769.23 on a bi-weekly basis. *Id.* at 7 ¶ 43–44.

Plaintiff alleges that when Pavement "suffer[ed] financial hardship" in 2022, Defendant directed Pavement's Controller to inform him of all of Pavement's finance-related matters, including payroll and bills owed so that he could determine which of Pavement's costs should and should not be paid. ECF 1, at 3 ¶ 13. Specifically, Plaintiff alleges that Defendant "explicitly directed" Pavement's Controller to not pay the wages of Pavement's employees, including Plaintiff, for six weeks from approximately August 14, 2022, to approximately September 24, 2022. *Id.* at 3 ¶ 14. Defendant also directed Williams to inform Pavement's employees that it would no longer pay them their bi-weekly salaries. *Id.* ¶ 17.

According to the complaint, Defendant ultimately ceased paying all employees their salaries, hourly wages, and commissions for the pay period beginning on August 14, 2022. ECF 1, at 7 ¶ 45. Williams and Defendant repeatedly promised employees that Defendant and Vicour were working with a new bank and that Pavement's employees would be paid soon. *Id.* at 3 ¶ 17. However, Plaintiff and other employees never received payment of the wages they were promised and were instead laid off. *Id.* ¶¶ 18–19. Plaintiff and the other employees received notice of termination of their employment through an email from Williams at the direction of Defendant, stating "[p]er communication from [Defendant], this morning, 9-21-22. Please inform all

3

employees of Pavement Company their employment status is layoff." *Id.* ¶ 20. Plaintiff asserts that he stopped working for Pavement on or about September 24, 2022. *Id.* at 6 ¶ 41. As a result, Plaintiff alleges that Defendant has been "directly and unconscionably enriched" by ceasing to pay Pavement's employees. *Id.* at 5 ¶ 35. Defendant ultimately filed a Chapter 11 bankruptcy petition on behalf of Pavement, identifying himself as "Director," in 2022. *Id.* ¶ 31; ECF 9, at 8.

On December 12, 2024, Plaintiff filed his complaint in this Court. ECF 1. Defendant has not filed an answer to Plaintiff's complaint, but Defendant's attorney contacted Plaintiff's counsel seeking to resolve this matter and denied the allegations Plaintiff made against him. ECF 9, at 2. Through December 2024 and January 2025, the parties informally exchanged information, settlement demands, and counter-offers. *Id.*

The parties ultimately signed a settlement agreement which was signed by all parties on February 7, 2025. ECF 9, at 2; ECF 9-1, at 1. The settlement agreement provides that "Defendant . . . shall pay Plaintiff a total sum of Twenty-Two Thousand and Five Hundred U.S. Dollars and 00/100 . . . to settle all of Plaintiff's claims for wages, statutory/liquidated damages, and attorneys' fees and costs" within 10 days of this Court's approval of the Agreement. ECF 9-1, at 1. On March 4, 2025, the parties filed this Joint Motion.

## II.     LEGAL STANDARD

"Because Congress enacted the FLSA to protect workers from the poor wages and long hours that can result from significant inequalities in bargaining power between employers and employees, the statute's provisions are mandatory and . . . are generally not subject to bargaining, waiver, or modification by contract or settlement." *Saman v. LBDP, Inc.*, Civ. No. DKC 12-1083, 2013 WL 2949047, at *2 (D. Md. June 13, 2013) (citing *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 706 (1945)). One exception to this general rule is that a court "can approve a settlement between an employer and an employee who has brought a private action for unpaid wages pursuant

to Section 216(b), provided that the settlement reflects a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Id.* (quoting *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1354 (11th Cir. 1982)).

In determining whether to approve an FLSA settlement agreement, courts in the Fourth Circuit typically utilize the factors outlined in the Eleventh Circuit's *Lynn's Food Stores* decision. *See Hackett v. ADF Rest. Invs.,* 259 F. Supp. 3d 360, 365 (D. Md. 2016) (citing *Lynn's Food Stores, Inc.,* 679 F.2d at 1354); *see also Lopez v. NTI, LLC,* 748 F. Supp. 2d 471, 478 (D. Md. 2010); *Duprey v. Scotts Co. LLC,* 30 F. Supp. 3d 404, 407–08 (D. Md. 2014). The Court considers the following factors: "(1) whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the settlement, and (3) the reasonableness of the attorneys fees, if included in the agreement." *Hackett,* 259 F. Supp. 3d at 365 (citing *Lynn's Food Stores, Inc.,* 679 F.2d at 1354). The Court addresses each of these factors in turn and will approve the settlement agreement.

## III. ANALYSIS

### A. There Is a *Bona Fide* FLSA Dispute.

"To determine 'whether a *bona fide* dispute exists as to a defendant's liability under the FLSA,' the Court should 'examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement.'" *Sutton v. Cap. City Motorsports LLC,* Civ. No. 8:24-1665-AAQ, 2025 WL 385773, at *2 (D. Md. Feb. 4, 2025) (citing *Duprey,* 30 F. Supp. 3d at 408). "Disagreements over rates of pay and hours worked can constitute *bona fide* disputes over a defendant's liability." *Id.* (quoting *Fernandez v. Washington Hosp. Servs., LLC,* Civ. No. AAQ-23-839, 2023 WL 4627422, at *2 (D. Md. July 19, 2023)). Courts may look at the pleadings and subsequent filings of the parties, including the proposed settlement agreement itself if presented,

5

to determine whether the case involved a *bona fide* dispute. *See Mendoza v. Filo Cafe, LLC*, No. 8:23-CV-2703-AAQ, 2024 WL 964226, at *2 (D. Md. Mar. 5, 2024) (citing *Duprey*, 30 F. Supp. 3d at 408); *Saman*, 2013 WL 2949047, at *3.

The allegations set forth in Plaintiff's complaint and the provisions of the settlement agreement establish that there is a *bona fide* FLSA dispute between the parties. In count I, the only count brought under the FLSA, Plaintiff alleges that Defendant willfully violated the FLSA's minimum wage provision by "fail[ing] to pay Plaintiff at least the minimum wage from, on or about August 14, 2022, for various statutory workweeks." ECF 1, at 7 ¶ 51. In response to these allegations, "Defendant denies Plaintiff's allegations and denies any wrongdoing" and maintains this assertion in the proposed settlement agreement. ECF 9-1, at 1. The Joint Motion states that "[a]lthough Defendant has not formally [a]nswered the [c]omplaint, he has denied all allegations against him, including that he is an employer under the FLSA, MWHL and MWPCL."[2] ECF 9, at 6. "Defendant further disputes the amount of wages Plaintiff alleges he is owed, on the basis that Plaintiff admittedly failed to timely challenge Pavement's Schedule E/F bankruptcy filings, which calculated and reported his alleged owed wages as a lesser amount." *Id.* Based on these assertions, the parties have shown that they share several legitimate disputes governed by the FLSA.

### B. The Settlement Agreement Is Fair and Reasonable.

In determining whether the settlement agreement is fair and reasonable, the Court considers:

> (1) the extent of discovery undertaken; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of plaintiff's counsel; (5) the opinions of counsel; and (6) the probability of the plaintiff's success on the merits, and the amount of settlement contrasted with the potential recovery.

---

[2] As noted above, the parties filed the Joint Motion before Defendant filed an answer to the complaint.

6

*Rios v. Potomac Rest. Grp., Inc.*, No. 8:20-CV-00939-PX, 2020 WL 6044327, at *3 (D. Md. Oct. 13, 2020) (citing *Hackett*, 259 F. Supp. 3d at 365).

In the instant case, the factors favor the conclusion that the parties' settlement agreement is fair and reasonable. The parties have engaged in informal discovery, which permitted them sufficient information to negotiate a settlement agreement, weigh the costs of engaging in further litigation, and conclude that a settlement at this early stage is in the parties' financial interests. *See* ECF 9, at 7–8. There are also no facts suggesting that any fraud or collusion has taken place, allowing the "presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary" to remain. *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08cv1310, 2009 WL 3094955, at *12 (E.D. Va. Sept. 28, 2009)). Both parties are "represented by experienced counsel, who negotiated a fair and reasonable settlement for the Parties after weeks of extensive negotiations." ECF 9, at 8–9. Finally, as to the probability of Plaintiff's success on the merits and the amount of the settlement in relation to the potential recovery, the parties highlight the unpredictability of any recovery by Plaintiff. *See id.* at 9 (noting that Pavement is defunct and had filed for bankruptcy in 2022). With this agreement, Plaintiff will receive a greater sum than the full wages that he alleges Defendant owes him. *Id.* at 9–10. The settlement agreement is fair and reasonable.

### C. The Attorneys' Fees Sought Are Reasonable.

The FLSA provides that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Even where attorneys' fees are negotiated by the parties as part of a settlement agreement, the Court still assesses their reasonableness. *See Johnson v. Heartland Dental, LLC*, Civ. No. PJM 16-2154, 2017 WL 2266768, at *4 (D. Md. May 23, 2017) ("The

reasonableness of the fee award proposed in an FLSA settlement must be independently assessed, regardless of whether there is any suggestion that a 'conflict of interest taints the amount the wronged employee recovers under a settlement agreement.'" (quoting *Lane v. Ko-Me, LLC*, Civ. No. 10-2261, 2011 WL 3880427, at *3 (D. Md. Aug. 31, 2011))).

When determining whether attorneys' fees are reasonable, "the court starts with the 'lodestar' figure, which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *CoStar Grp., Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780, 787 (D. Md. 2000) (citations omitted). "An hourly rate is reasonable if it is 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Duprey*, 30 F. Supp. 3d at 412 (quoting *Blum v. Stenson*, 465 U.S. 886, 890 n.11 (1984)). When evaluating a fee request, "the court must consider all relevant evidence to determine 'the prevailing market rates in the relevant community,' including lawyer affidavits, fee awards in similar cases, general surveys, fee matrices, and even its 'own personal knowledge[.]'" *De Paredes v. Zen Nails Studio LLC*, 134 F.4th 750, 754 (4th Cir. 2025) (first quoting *Blum*, 465 U.S. at 984, then quoting *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 179 (4th Cir. 1994)) (citing *McAfee v. Boczar*, 738 F.3d 81, 91 (4th Cir. 2013); *Eastern Assoc. Coal Corp. v. Director, Off. of Workers' Comp. Programs*, 724 F.3d 561, 567 (4th Cir. 2013)).

Additionally, the Fourth Circuit provides that district courts should generally consider twelve factors in addition to the lodestar method to determine whether attorneys' fees are reasonable. *See Barber v. Krimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978). The twelve factors are the following:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the

time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between the attorney and client; and (12) the attorneys' fees awards in similar cases.

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978); *Rios v. Potomac Rest. Grp., Inc.*, Civ. No. 8:20-00939-PX, 2020 WL 6044327, at *3 (D. Md. Oct. 13, 2020).

Here, the settlement agreement allows for $6,000 for all attorneys' fees, costs, and expenses to be awarded to Plaintiff's counsel. *See* ECF 9, at 10. Plaintiff's counsel also seeks an additional $6,600 as a contingency enhancement, pointing to the uncertain vicarious liability and insurance coverage issues which made taking on this case risky, for a total award of $12,600 in attorneys' fees and costs. *See id.* at 13–14. Considering the *Johnson/Barber* factors here, the Court finds the fee award reasonable.

Plaintiff's counsel Howard B. Hoffman provided a declaration attesting that the attorneys' fees sought includes compensation for 7.5 hours of work for him, 15.7 hours of work for associate Jordan Liew, and 0.8 paralegal hours. *See* ECF 9-2, at 5 ¶ 20. The Court finds these hours reasonable. After deducting costs from the $12,600 total sought, the average hourly attorney rate charged is $508.84. *Id.* ¶ 11. Hoffman has twenty-six years of experience, *see id.* at 1 ¶ 2, and Liew has nine, *see Jordan Liew*, Hoffman Employment Law, LLC, https://www.hoholaw.com/team/jordan-liew/. While this hourly rate is higher than those outlined in Appendix B to this Court's Local Rules, the Fourth Circuit has recently rejected the "anchoring effect" of the rates in Appendix B and held that "the court may not elevate a matrix above all other types of evidence or treat a matrix as establishing a presumptive answer or range of answers." *De Paredes*, 134 F.4th at 754. Further, the Court has previously found hourly rates higher than those

9

proposed here reasonable in "in FLSA settlements when all parties have agreed to them." *Sutton*, 2025 WL 385773, at *4 (collecting cases).

This case presented unique vicarious liability and recovery issues given Pavement's bankruptcy, the fact that Plaintiff did not file a proof of claim with the bankruptcy court, and the uncertainty of insurance coverage. *See* ECF 9, at 12. Counsel's declaration states that the firm expected from the outset that "they would either receive an appropriate risk-adjusted premium for taking on extensive work in suing an individual with uncertain vicarious liability – or they would receive nothing." ECF 9-2, at 4 ¶ 14. Further Counsel points out that "Plaintiff will still receive 1.1x or 1.5x damages owed, after payment of a contingency enhancement to the legal fees paid by Defendant." ECF 9, at 14.

While the Court appreciates Plaintiff's counsel's thoughtful discussion of the appropriateness of the contingency enhancement to this case and the applicability of *Venegas v. Mitchell*, 495 U.S. 82 (1990), to FLSA cases writ large, *see* ECF 9, at 16–22, the Court need not engage in this topic as it finds the total number of hours worked and the resulting hourly rate (even accounting for the contingency fee enhancement) reasonable.

## IV.   CONCLUSION

For the foregoing reasons, the Joint Motion is **GRANTED**. A separate implementing Order will issue.

Dated: June 9, 2025

/s/
Brendan A. Hurson
United States District Judge